# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON RECONSIDERATION EN BANC

## NO. 03-19-00294-CV

**The City of Austin, Texas, Appellant**

**v.**

**Sayeed Anam, Individually and as Independent Administrator of The Estate of Zachary Anam and Cara Anam, Individually, Appellees**

### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. C-1-PB-17-002191, THE HONORABLE GUY S. HERMAN, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

I would deny the City's motion for en banc reconsideration. Because the Court does not, I dissent.

The Texas Rules of Appellate Procedure provide that "[e]n banc consideration of a case is not favored and should not be ordered unless necessary to secure or maintain uniformity of the court's decisions or unless extraordinary circumstances require en banc consideration." Tex. R. App. P. 41.2(c). The justifications for granting en banc review do not apply here. The City has failed to identify any conflict between this Court's opinion on original submission and other decisions by this Court. *See Schindler Elevator Corp. v. Anderson*, 78 S.W.3d 392, 424 (Tex. App.—Houston [14th Dist.] 2001, pet. granted, judgm't vacated w.r.m.) (Frost, J.,

concurring op. to denial of en banc reh'g) ("Appellant did not cite to a direct conflict between the panel opinion and any other opinion of this court. Thus, en banc review is not required in this case to maintain uniformity of our decisions."). Moreover, this case does not involve extraordinary circumstances. *See Texas Dep't of Fam. and Protective Servs. v. Grassroots Leadership, Inc.*, No. 03-18-00261-CV, 2019 WL 6608700, at *2 (Tex. App.—Austin Dec. 5, 2019) (Triana, J., dissenting opinion to denial of en banc reh'g) (observing that "extraordinary circumstances" exception includes cases that address "issues of statewide and arguably national importance that were 'highly significant to the public or in which the public ha[d] a high level of interest' at the time" of court's decision (quoting *Twigland Fashions, Ltd. v. Miller*, 335 S.W.3d 206, 226 (Tex. App.—Austin 2010, no pet.) (Jones, C.J., concurring in denial of en banc reh'g)). Thus, en banc reconsideration is inappropriate here, and I would deny the motion for that reason.

I would also deny the motion because the Court's original opinion decided the case correctly. The trial court did not err in denying the City's plea to the jurisdiction, and its order should be affirmed.

The Anams allege that Wall's negligent failure to properly fasten Zachary's seatbelt proximately caused Zachary's death. Wall acknowledged his duty to keep Zachary safe. Wall testified that department policy required him to fasten Zachary's seatbelt to keep Zachary safe. He further agreed that it was his responsibility to refasten a seatbelt that came unfastened "if [he] notice[d] it." He agreed that it is well known that people with mental illness or suffering depression or who have been detained may be suicidal.

To establish a waiver of immunity, the Anams must establish that their son's death "arose from" Wall's failure to fasten Anam's seatbelt and that failure to fasten the seatbelt constituted operation or use of a motor vehicle. *See* Tex. Civ. Prac. & Rem. Code

2

§ 101.021(1)(A). Although the parties agree that Zachary shot himself, the Anams urge that Wall's failure to safely transport Zachary by ensuring that his seatbelt remained fastened was also a cause of Zachary's death because "had the seatbelt been restraining Zachary, he could not have drawn the handgun." *See PHI, Inc. v. Texas Juv. Just. Dep't*, 593 S.W.3d 296, 303–04 (Tex. 2019) (concluding that fact issue existed as to whether accident "arose from" parking vehicle without engaging emergency parking brake even though worn gear-shift mechanism caused accident in which unoccupied vehicle rolled into helicopter).

The City relies on *Montoya v. Houston Independent School District*, 177 S.W.3d 332 (Tex. App.—Houston [1st Dist.] 2005, no pet.), to assert that allowing Zachary's seatbelt to remain unfastened merely "furnish[ed] the condition" that made the injury possible. However, the First Court later recognized in *City of Houston v. Nicolai* that its opinion in *Montoya* "predates the Texas Supreme Court's opinion in *Ryder*," in which the supreme court determined that a collision between two eighteen-wheeled trucks arose from the use of a police cruiser because the cruiser was being positioned such that its headlights blinded or distracted one of the drivers involved in the collision. 539 S.W.3d 378, 391 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *see Ryder Integrated Logistics*, *Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 928-30 (Tex. 2015) ("Cause in fact is essentially but-for causation. In other words, a tortious act is a cause in fact if [it] serves as 'a substantial factor in causing the injury and without which the injury would not have occurred.'" (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010))). *Nicolai* affirmed the denial of a plea to the jurisdiction where an officer either did not fasten or improperly fastened the decedent's seatbelt and the decedent was killed when another driver collided with the patrol car. 539 S.W.3d at 385.

3

The City also relies on *City of Sugarland v. Ballard*, 174 S.W.3d 259, 265-66 (Tex. App.—Houston [1st Dist.] 2005, no pet.), to argue that not fastening a seatbelt cannot give rise to liability under the Tort Claims Act and to further argue that Wall could not be liable because he was not "actively" operating or using the vehicle. *Ballard*, like *Montoya*, predates *Ryder* and *Nicolai*. The *Ballard* court concluded that "non-use" of property, such as a restraint, did not constitute use or operation of a motor vehicle. 174 S.W.3d at 268. However, the Texas Supreme Court has recently held that the vehicle-use waiver applied when a plaintiff alleged an accident arose from a driver's failure to engage an emergency parking brake. *PHI*, 593 S.W.3d at 302. In *PHI*, an unoccupied, parked vehicle rolled into and damaged a helicopter. *Id.* at 303. The primary cause of the accident was a worn gear-shift mechanism, but the court determined that failure to use the emergency parking brake also caused the accident. Thus, non-use of property, such as the emergency brake, could give rise to liability under the Tort Claims Act. *PHI* then expressly rejected the argument that the Tort Claims Act requires use or operation of a vehicle to be "active," explaining that "no court has the authority, under the guise of interpreting a statute, to engraft extra-statutory requirements not found in a statute's text." *Id.* at 305.

As *Ryder* and *PHI* illustrate, improper use or failure to use a vehicle's safety equipment can constitute use of a motor vehicle, and I would conclude that under the circumstances presented here, Wall's failure to secure Zachary's seatbelt constitutes use or operation of a motor vehicle. Appellees allege and the City does not dispute that, had Zachary been properly restrained, he would have been unable to access the gun or position himself in a way that allowed him to shoot himself in the head. On the facts of this case and the record before us, I would conclude the Anams have raised a fact issue as to whether Zachary's death arose from Wall not refastening Zachary's seatbelt. *Cf. Nicolai*, 539 S.W.3d at 385.

4

In arguing that section 101.021(1) does not apply, the City, in its briefing, does not argue lack of foreseeability. As a matter of fact, the word foreseeability never once appears in the City's briefing. Proximate cause is not mentioned except to use that phrase in conjunction with its argument that the vehicle merely provided a setting for the death—an argument that goes to whether the death arose from the use of a motor vehicle, not to whether the death was foreseeable. Prior to filing its motion for en banc reconsideration, the City did not at any point argue to the district court or this Court that Zachary's death was not foreseeable. Instead, that argument was raised sua sponte by the original dissent. The City then, for the first time on reconsideration, urged its foreseeability argument. The Court now concludes as a matter of law that Zachary's death was not foreseeable. I disagree.

In addition to showing that Zachary's death arose from the use of a motor vehicle (and, correspondingly that the failure to use the seatbelt was at least an actual cause of Zachary's death), Appellees have raised a fact issue regarding whether Zachary's death was foreseeable. *See Ryder*, 453 S.W.3d at 929 (noting components of proximate cause are cause in fact and foreseeability). Appellees' pleading states that Wall had a duty to ensure Zachary's seatbelt was securely fastened and that, had he done so, he would have discovered the handgun in Zachary's waistband or, alternatively, that a properly fastened seatbelt would have kept Zachary from accessing the gun. The Court declares, without any basis in the record, that the sole foreseeable injury when a seatbelt is not fastened in a police vehicle is injury arising from a collision or other abrupt stop. The Court's speculation regarding the purpose of securing handcuffed detainees in a seatbelt could be met with further speculation that detainees are secured in seatbelts to prevent them from hurting themselves, hurting other people, or damaging patrol cars by kicking out the windows. The Court's speculation also ignores the standard for foreseeability and the pleadings

5

and evidence we are compelled to review, in a light most favorable to the plaintiff, in resolving this plea to the jurisdiction.

"Foreseeability requires only 'that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen.'" *Id*. (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 551 (Tex. 1985)). "[F]oreseeability does not require that the exact sequence of events that produced an injury be foreseeable." *County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) (citing *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)); *see Clark v. Waggoner*, 452 S.W.2d 437, 440 (Tex. 1970) (stating that foreseeability prong of proximate cause does not "require that [defendants] anticipate just how injuries will grow out of [the] dangerous situation" and "[t]he act of a third person which intervenes and contributes a condition necessary to the injurious effect of the original negligence will not excuse the first wrongdoer if such act ought to have been foreseen"); *cf. Doe v. Boys Club of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) (determining that if club had discovered volunteer's DWI convictions, the "information would not have caused the club reasonably to anticipate his subsequent sexual assaults on the minor plaintiffs"). "Instead, only the general danger must be foreseeable." *Brown*, 80 S.W.3d at 556 (declining to hold as matter of law that it is unforeseeable that unexpected change in lighting on highway could impair motorist's ability to avoid obstacles ahead and noting that although decedent's lack of care "may be an issue of comparative responsibility for the jury to decide, *see* Tex. Civ. Prac. & Rem. Code § 33.012, it does not render the subsequent harm in this case unforeseeable").

In this case, Wall acknowledged in his deposition that detainees are often mentally unstable or suicidal and that the use of a seatbelt was intended to keep detainees safe.

6

His statement was not limited in its application to safety from a collision or abrupt stop. He acknowledged that he could see the video, which showed that for several minutes before the vehicle left the mall where Zachary was apprehended, the shoulder strap of the seatbelt was behind Zachary's back rather than across his chest. Less than three minutes after the car began moving, the video shows the lap belt of Zachary's seatbelt clearly unbuckled and the holster at Zachary's waist. About seven minutes later, while the vehicle was briefly stopped, Zachary stood up from the seat to reposition himself, after which Wall asked Zachary whether he had "anything else illegal" on him and informed him that he would be charged with an additional felony if anything else were found on him at the police station. At his deposition, Wall acknowledged having asked this question because he was concerned Zachary might have been in possession of something illegal because "lots of weapons are missed" when suspects are taken to jail. Wall commented on how Zachary was "squirming around" in the back seat. About four minutes after Wall asked whether Zachary had anything else illegal—nearly eleven minutes after the unbuckled seatbelt and holster are visible on the backseat camera that Wall acknowledged viewing during the drive—Zachary stated that he had a loaded gun to his head. At that point, Wall left the car and moved about fifteen feet away. He explained that Zachary remained in the backseat of the vehicle, while Wall warned others nearby who might have been endangered to "keep going" and "get out of the way" during the four minutes between when Wall left the vehicle and Zachary pulled the trigger.

Given Wall's testimony regarding the suicidal tendencies of detainees, his awareness that Zachary was despondent, his general awareness that even detained suspects are often in possession of weapons, and the video showing that for most of the drive, Zachary was not properly restrained by the seatbelt and was evidently in possession of a weapon, I conclude

7

the Anams have met their burden of raising a fact issue regarding foreseeability.  Accordingly, I would hold the trial court did not err in denying the City's plea to the jurisdiction.

## CONCLUSION

For the foregoing reasons, I would deny the City's motion for en banc reconsideration and affirm the trial court's order denying the City's plea to the jurisdiction.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Goodwin, Baker, Triana, Kelly, and Smith

Filed:   December 30, 2020

8